IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KENNETH CRAIG MILLER, | § |
| Plaintiff, | § § § § |
| | Case No. 2:17-cv-00496-JRG-RSP |
| v. | § § |
| CITY OF EAST MOUNTAIN ET AL, | § § |
| Defendants. | § § |

## ORDER

The Magistrate Judge previously filed his Report and Recommendation (Dkt. No. 143), recommending that Defendant City of East Mountain's Motion to Dismiss (Dkt. No. 102) be granted in full. Plaintiff Kenneth Craig Miller now files an Objection (Dkt. No. 143) to that Report and Recommendation. The undersigned concludes that the objections raised are without merit and therefore ADOPTS the Magistrate Judge's Recommendation and grants the motion to dismiss the City of East Mountain.

Miller argues that East Mountain ratified the acts of Charlson and Miller by failing to meaningfully investigate and punish allegations of unconstitutional conduct and that the city is therefore liable for those acts. (Dkt. No. 143 at 7–8.) Miller does not provide any binding authority to suggest that the ratification theory applies, and the Fifth Circuit has stated that the ratification theory applies in only "extreme factual circumstances." *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). In *Snyder*, the Fifth Circuit refused to apply the ratification theory to hold a city liable under § 1983 when a city police officer shot a

fleeing suspect in the back. 142 F.3d at 798. By contrast, in *Grandstaff v. City of Borger*, the Fifth Circuit applied the ratification theory when "the entire night shift of the Borger police department 'poured' gunfire into a slow-moving pick-up truck 'without awaiting any hostile act or sound. . . .'" *Barkley v. Dillard Dep't Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 168, 171 (5th Cir. 1985)). The Fifth Circuit characterized these events as an "incompetent and catastrophic performance" and a gross misuse of deadly weapons. *Id.* (citing *Grandstaff*, 767 F.2d at 171). This case does not rise to the level of an "incompetent and catastrophic performance" and instead appears much less exceptional than even *Snyder*, so the ratification theory is inapplicable.

Miller argues that he has sufficiently pled that Charlson and Coulter were policymakers for the City of East Mountain and that a municipality may be liable for constitutional violations of its policymakers. However, even accepting that Charlson and Coulter are in fact policymakers, Miller still has not provided well pleaded facts showing that Charlson or Coulter committed a constitutional violation for (1) retaliatory conduct under 42 U.S.C. § 3617; (2) an unlawful stop, arrest or use of force; (3) denial of equal protection of the laws; or (4) conspiracy to subject Miller to a sham trial.

The Magistrate Judge reached the correct conclusion for the unlawful stop and arrest claims. For the unlawful stop and arrest claims, Miller has not shown that Charlson committed any violation as the Complaint acknowledges that Charlson arrived at the scene after the initial stop. (Dkt. No. 87 at ¶ 59 ("Betty Davis was on the scene within five minutes of Terry Davis' detaining Miller.").) An officer may be liable under § 1983 under a theory

of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *see also Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (concluding that claims against two officers for false-arrest under a bystander liability theory must fail as the officers arrived after the suspect's arrest and plaintiff did not otherwise show how the officers obtained knowledge that the arrest was unlawful). Similarly here, Miller has not provided any facts to show how Charlson had any knowledge that the arrest was unlawful, and the Complaint states that Charlson arrived after the stop. Miller does not assert that Coulter was present or involved with the stop or arrest. Accordingly, Miller has not shown that any policymaker committed a constitutional violation. The Court therefore agrees with the conclusions made within the Report related to the unlawful stop and arrest claims.

The Report also reaches the correct conclusion as to the use of force claim. Miller claims that Charlson told Davis to tase Miller. (Dkt. No. 87 at ¶ 59.) Even taking this to be true, this does not constitute an actionable excessive use of force claim. For an excessive force claim, a plaintiff must show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). Here, Miller has not alleged an injury from that alleged action other than his fear of being tasered, and no use of force occurred as Miller does not allege that he was in fact tasered. Miller also claims that Davis applied handcuffs too tightly and that this was an excessive use of force. However, the Fifth Circuit

has found that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Even if Miller could have a claim for the handcuffing, he still fails to show how the City of East Mountain can be held liable for Terry Davis' actions. For these reasons and the reasons stated within the Report, the Court agrees that the use of force claim should be dismissed.

For the claim that East Mountain conspired to subject Miller to a sham trial, Miller fails to provide any well pleaded facts that a conspiracy existed between the parties. "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citing *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979)). Conspiracy allegations must be more than conclusory statements as "more than a blanket of accusation is necessary to support a § 1983 claim." *Id*. at 1024 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)). For the issue of whether a conspiracy existed, Miller merely provides conclusory statements. Consequently, Miller fails to state a claim for conspiracy even taking the facts in his Third Amended Complaint to be true.

Miller argues that the Recommendation to dismiss all claims with prejudice is "premature and unduly harsh." (Dkt. No. 143 at 3.) The Court notes that Miller has already filed a Third Amended Complaint. The Fifth Circuit held that a district court did not abuse its discretion by dismissing a case and rejecting a plaintiff's request for leave to amend where plaintiffs have already twice amended their complaint. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) ("[a]lthough plaintiffs should

ordinarily be offered an opportunity to amend if it appears that a more carefully drafted complaint might state claims upon which relief could be granted, that course need not be followed here since plaintiffs have already twice amended their complaint."); *see also Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."). Consequently, the Court agrees with the recommendation to dismiss the claims.

After review of the other arguments made within the objection, the Court agrees with the remaining conclusions made within the Report. Accordingly, the Court also ADOPTS the recommendations to DISMISS WITH PREJUDICE claims against East Mountain for Denial for Equal Protection and its retaliation claim under 42 U.S.C. § 3617.

**So ORDERED and SIGNED this 21st day of March, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE